68 P.3d 1088 (2003)
116 Wash.App. 466
John R. PETTIT and Constance J. Miller, husband and wife, and the marital community composed thereof, Appellants,
v.
Stephen DWOSKIN and Janet Donelson, husband and wife, and the marital community composed thereof, Respondents.
No. 48386-2-I.
Court of Appeals of Washington, Division 1.
April 14, 2003.
*1089 Steven P. Recor, M. Gerald Herman, Herman Recor Araki Kaufman and Simmerly & Jackson, Bellevue, WA, for Appellant.
Michael J. Bond, Garnder Bond Trabolsi St. Louis & Clement, Seattle, WA, for Respondent.

*1090 PUBLISHED IN PART
ELLINGTON, J.
During a party at a private home, a deck collapsed and Constance Miller was injured. Miller contends construction of the deck did not conform to the building code. Because the homeowner obtained the original building permit, and the permit was conditioned upon compliance with the code, Miller contends the homeowner had a nondelegable duty to ensure compliance. We hold that such a homeowner has a duty to exercise reasonable care to see that code provisions are satisfied, that this duty may be delegated, and that the homeowner is liable if the contractor is negligent. The court did not err in refusing to instruct that the homeowner had a nondelegable duty, but did err in refusing to instruct that violation of an ordinance may be evidence of negligence. We therefore reverse and remand for a new trial. We address other issues in the unpublished portion of this opinion.

FACTS
Constance Miller and Janet Donelson were coworkers at the University of Washington. A "going-away" party for Miller was held at the home of Donelson and her husband, Stephen Dwoskin. During the party, the deck collapsed. Miller was injured when she fell 15 feet to the ground below.
The home was constructed for Donelson and Dwoskin in 1984-85. Dwoskin personally obtained the building permit from the Seattle building department. The permit was granted "subject to compliance with the ordinances of the City of Seattle."[1] Dwoskin participated in designing the home,[2] but employed a structural engineer and a construction contractor. The deck designs did not call out weatherproofing details.
The deck was built using untreated wood support members surrounded by hollow columns that were sheathed in siding to match the house. A steel railing was bolted to the edge of the deck. Over time, water flowed past the railing bolts and into the columns, where it came into contact with the untreated wood. Pervasive dry rot caused the deck to collapse.
Miller sued Donelson and Dwoskin for injuries sustained in her fall from the deck. A jury returned a defense verdict, and Miller appeals.

DISCUSSION
Miller contends that because Dwoskin personally obtained the building permit, he had a nondelegable duty to ensure that the structure conformed to the Seattle Building Code, which requires use of decay-resistant materials for structural members exposed to weather. The trial court refused to so instruct the jury.
As a threshold matter, we must decide whether this issue is properly before us. Respondents contend it is not, because Miller never formally pled or proved the relevant Seattle ordinance, as required by CR 9(i).[3] Respondents did not, however, raise this objection below. During pretrial motions, Miller argued that the code applied and had been violated; at trial, Miller presented evidence of the content of the Uniform Building Code and argued that Seattle had adopted it.[4] At no time did Respondents object that the Seattle ordinance had not been proved. In addition, Respondents themselves offered evidence that the city building inspector had passed the project, Dwoskin testified as to applicable code requirements, and Respondents proposed an instruction (which the court gave) referencing *1091 Miller's claim that design and construction of the deck violated the Uniform Building Code. Any objection Respondents may have had as to Miller's failure to formally plead or prove the contents of the code was waived.[5] We turn to the merits of Miller's argument.
At common law, one is not ordinarily liable for the negligence of an independent contractor.[6] An exception to that rule exists when the law imposes the performance of certain duties affecting safety. Miller relies upon this exception. Her argument is based chiefly upon two cases.
In Amann v. City of Tacoma,[7] a general contractor obtained a permit to demolish one building and construct another. The permit was granted subject to compliance with city ordinances. The building code specified the required demolition method, but the demolition subcontractor used a different method. A wall collapsed, killing a child and injuring others.
The jury found that the subcontractor was not negligent, but had violated the code. The Supreme Court held that the jury's finding of a code violation was controlling under the doctrine of negligence per se. Because the permit required the general contractor to comply with the code, the general contractor was also liable, because his duty was nondelegable:
The permit was granted, conditioned upon compliance with the ordinances of the city. The city's building code required that the building be demolished story by story. This was a safety provision designed, in part at least, for the safety of persons using the street upon which the building abutted....
Where a statute or municipal ordinance requires one to do certain things, or to take certain precautions for the protection of the public, he cannot delegate such a duty to another, even though such other person may sustain the relationship of independent contractor as to him.[8]
The property owner had not applied for the permit, and therefore had no liability.[9]
The result in Amann is premised upon two foundations: first, that violation of an ordinance is negligence per se,[10] and second, that a duty imposed by law to take certain precautions for the protection of the public is nondelegable.[11] Because the general contractor had agreed to do the work in compliance with the building code, he was "under a duty to perform the conditions of the permit, or else see that they were performed."[12]
In Sea Farms, Inc. v. Foster & Marshall Realty, Inc.,[13] an owner/developer had taken out a dredging permit to construct a marina. The permit expressly required the permit holder to "make every reasonable effort ... to minimize any adverse impact of the work on fish, wildlife and natural environmental values."[14]Sea Farms alleged its oyster beds were damaged because the owner's dredging contractor was negligent in the manner of the dredging, and had violated state environmental statutes. Relying on Amann, the court held the permit holder liable for the contractor's failure to follow the prescriptions of the permit and to comply with state statutes.[15]
Both Amann and Sea Farms applied the doctrine of negligence per se, with the result that the duty imposed was absolute, and the question of actual negligence was irrelevant. But the doctrine of negligence per se is no longer viable in Washington. *1092 Rather, violation of a legal requirement is evidence of negligence.[16]Amann and Sea Farms are thus of limited assistance here.
Miller also points, however, to the Restatement (Second) of Torts § 424 (1965):[17]
One who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions.
Dwoskin's permit was conditioned on compliance with the Seattle Building Code, which is based on the state code.[18] The first enumerated purpose of the state code is to "promote the health, safety and welfare of the occupants and users of buildings and structures and the general public."[19] Miller therefore contends the Seattle code imposes a duty to provide specified safeguards or precautions for the safety of others as contemplated by the Restatement, and that the duty to comply is nondelegable. Her proposed instructions[20] set forth a nondelegable duty upon Dwoskin to see that all code requirements were met.
Under the Restatement, however, whether a statute or regulation requiring safeguards or precautions imposes an absolute duty, or merely a duty to use reasonable care, depends upon construction of the particular provision. Only an absolute duty is nondelegable. If the duty is one of reasonable care, the burden is delegable, and one who employs an independent contractor is liable only if the contractor fails to exercise such care.[21]
Miller alleges the following code provision was violated:

*1093 [W]here experience has demonstrated a specific need, approved wood of natural resistance to decay or treated wood shall be used for those portions of wood members that form the structural supports ... when such members are exposed to the weather without adequate protection....[22]
This section addresses structural integrity. Given its subject and the purpose of the code generally, it is reasonable to assume its objectives include protecting the safety of those using the structure, which places Miller within the class of persons intended to be protected. The question is the nature of the duty imposed. The language of the section is general, and contemplates an exercise of judgment ("where experience has demonstrated a specific need ... exposed to the weather without adequate protection"). The section speaks to materials required for a durable structure, not to construction methods, and, in contrast to the circumstances in Amann or Sea Farms, immediate hazards to the public are not involved. Nothing in the language of the section evidences a need or intent to impose strict liability for noncompliance, and it is difficult to see how a strict duty of compliance could be applied to a regulation that itself requires judgment about when it applies. We conclude the duty imposed is not absolute, and therefore is delegable. The court did not err in refusing to instruct the jury that Respondents had a nondelegable duty to ensure compliance with the code. Rather, Dwoskin was liable only if his contractor was negligent.
Miller presented evidence that the design and construction of the deck failed to satisfy code requirements, and that this failure was a proximate cause of the collapse of the deck. She proposed instructions on general negligence, an instruction setting forth the relevant code section, and also the following instruction under RCW 5.40.050: "The violation, if any, of an ordinance is not necessarily negligence, but may be considered by you as evidence in determining negligence."[23] The court gave the general negligence instructions, but refused to instruct the jury as to the code requirements or that violation of an ordinance may be evidence of negligence.
This was error. The code section in question requires that structural members exposed to the weather without adequate protection be of treated wood. It was for the jury to decide whether the code was violated, and if so, whether that violation was evidence of negligence. But the jury had no such instructions. We therefore reverse and remand for a new trial.
The balance of this opinion having no precedential value, the panel has determined it should not be published in accordance with RCW 2.06.040.
BECKER, J., and KENNEDY, J., concur.
NOTES
[1] Exhibit 32.
[2] Donelson and Dwoskin are both licensed architects. No professional liability issues are asserted here.
[3] CR 9(i) states:

In pleading any ordinance of a county, city or town in this state it shall be sufficient to state the title of such ordinance and the date of its passage, whereupon the court shall take judicial notice of the existence of such ordinance and the tenor and effect thereof.
[4] Miller's presentation was accurate. Ordinance No. 111200 (1983) and Seattle Municipal Code Ch. 22.100, incorporating the Uniform Building Code, 1982 edition, into the Seattle Building Code, was in effect at the time Dwoskin received his permit and constructed the deck.
[5] See RAP 2.5(a); Washburn v. Beatt Equipment Co., 120 Wash.2d 246, 290, 840 P.2d 860 (1992).
[6] Tauscher v. Puget Sound Power & Light Co., 96 Wash.2d 274, 277, 635 P.2d 426 (1981).
[7] 170 Wash. 296, 16 P.2d 601 (1932).
[8] Amann, 170 Wash. at 309, 16 P.2d 601.
[9] Amann, 170 Wash. at 310, 16 P.2d 601.
[10] See Amann, 170 Wash. at 304-05, 16 P.2d 601.
[11] Amann, 170 Wash. at 304-05, 16 P.2d 601.
[12] Amann, 170 Wash. at 309, 16 P.2d 601.
[13] 42 Wash.App. 308, 711 P.2d 1049 (1985).
[14] Sea Farms, 42 Wash.App. at 312, 711 P.2d 1049.
[15] Sea Farms, 42 Wash.App. at 313, 711 P.2d 1049.
[16] See RCW 5.40.050; Mathis v. Ammons, 84 Wash.App. 411, 416-17, 928 P.2d 431 (1996).
[17] This section of the Restatement has apparently not been formally adopted in Washington. See Blodgett v. Olympic Savings and Loan Ass'n, 32 Wash.App. 116, 131, 646 P.2d 139 (1982). It has, however, been frequently discussed and relied upon. See, e.g., Tauscher v. Puget Sound Power and Light Co., 96 Wash.2d 274, 285, 635 P.2d 426 (1981) ("administrative rules may impose nondelegable duties as do statutes") (citing RESTATEMENT (SECOND) OF TORTS § 424 (1965)).
[18] Seattle Municipal Code Ch. 22.100.010.
[19] RCW 19.27.020.
[20] Miller's proposed Instruction 23 read:

At the time the Defendants' residence was constructed the Uniform Building Code adopted as an Ordinance of the City of Seattle provided:
It shall be unlawful for any person, firm or corporation to erect, construct, enlarge, alter, repair, move, improve, remove, convert or demolish, equip, use, occupy or maintain any building or structure or cause or permit the same to be done in violation of this code.
Clerk's Papers at 270.
Miller's proposed instructions cited the Seattle ordinance governing weather exposure, and read, in part:
In geographical areas where experience has demonstrated a specific need, approved wood of natural resistance to decay or treated wood shall be used for those portions of wood members which form the structural supports of buildings, balconies, porches or similar permanent building appurtenances when such members are exposed to the weather without adequate protection ... to prevent moisture or water accumulation on the surface or at joints between members.
Clerk's Papers at 271.
Miller's proposed Instruction 26 read:
If you find that Stephen Dwoskin applied for and was granted a building permit, by the City of Seattle, then you must find that he alone was responsible to see that the structure of the house and deck were built in conformity to the City of Seattle Building Code which was in effect at that time. Mr. Dwoskin cannot escape this responsibility by the claim that some other person or persons were the actual builders or constructors of the house.
Clerk's Papers at 252.
[21] RESTATEMENT (SECOND) OF TORTS § 424 cmt. b (1965). Comment b provides:

One type of statute or regulation imposes upon those doing the work an absolute duty to see that the specified safeguards or precautions are provided. The other type imposes merely a duty to use reasonable care to provide them. Whether a statute or regulation is of one type or the other is a matter of construction of the particular provision.
If the duty imposed is an absolute one, the employer is subject to liability for the failure of the contractor to provide the required safeguard or precaution, even though the contractor has exercised all reasonable care in his effort to do so. On the other hand, if the duty imposed is only one of reasonable care, the employer is subject to liability only if the contractor has failed to exercise such care. Thus if the provision is that an excavation in the street shall be lighted at night, and the contractor provides a proper light, which unexpectedly goes out, the employer's liability will depend upon the interpretation given to the provision, as imposing an absolute duty or merely requiring reasonable care.
[22] Uniform Building Code § 2516-11 (1982) (as adopted by Seattle Municipal Code Ch. 22.100.010).
[23] Clerk's Papers at 257.